SURYA C. MEHTA, Plaintiff-Appellant, v. JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY *et al.*, Defendants-Appellees.

First District (4th Division)   No. 85—3743

Opinion filed December 4, 1986.

Mahendra R. Mehta, of Chicago, for appellant.

Peterson, Ross, Schloerb & Seidel, of Chicago (J. Robert Geiman and William A. Chittenden III, of counsel), for appellee John Hancock Mutual Life Insurance Company.

Tribler & Marwedel, P.C., of Chicago (Mitchell A. Orpett, of counsel), for appellee Jagdish Patel.

JUSTICE JIGANTI delivered the opinion of the court:

Plaintiff brought this action against defendant, John Hancock Insurance Company (John Hancock), and its agent, Jagdish Patel (Patel), to recover the proceeds of a life insurance policy insuring plaintiff's deceased husband, Chinulal Mehta, in the face amount of $50,000. Plaintiff also sought damages for the alleged fraudulent and bad-faith rejection of the claim by John Hancock, resulting in emotional distress to her. Plaintiff appeals from orders granting summary judgment for both defendants based on a release she executed in exchange for return of the premiums paid. She contends she averred sufficient facts to state a cause of action and that a genuine issue of material fact exists concerning the validity of the release.

In her original complaint, plaintiff alleged that Patel was an agent of John Hancock and had approached deceased prior to November 8, 1981, and offered him a "non-medical" $50,000 life insurance policy and demanded an insurance premium, which deceased paid. John Hancock issued its policy on November 8, 1981, with plaintiff named as beneficiary. On August 30, 1982, the insured died, but John Hancock refused to pay the claim. In count II plaintiff further alleged that John Hancock, through its chief claims representative, George Hall, had fraudulently and in bad faith rejected her claim in violation of John Hancock's duty of good faith and fair dealing, resulting in severe emotional distress to her. In count III plaintiff alleged as a result of the refusal to pay the claim that she was required to borrow a substantial amount of money for living expenses. In count IV plaintiff sought punitive damages.

John Hancock filed a motion to dismiss pursuant to the provisions of section 2—619(a)(6) of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—619(a)(6)) and also seeking costs and attorney fees under section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—611). This defendant alleged: that deceased, in his application for the insurance, admitted no medical history; that John Hancock issued its policy effective November 8, 1981, in reliance upon deceased's answers in the application; that deceased died on August 30, 1982; and that the cause of death was listed on

the death certificate as massive myocardial infarction with hypertension and diabetes mellitus as contributing causes. Subsequently, John Hancock discovered that deceased had been hospitalized and treated for severe myocardial infarction and diabetes mellitus from April 7, 1981, to April 24, 1981, and that deceased did not truthfully disclose his prior medical history, which constituted a material misrepresentation in the application, rendering the policy void *ab initio*. John Hancock denied liability under the policy based on the deceased's misrepresentations and informed plaintiff, the designated beneficiary.

John Hancock's motion further alleged that after being advised orally and in writing of John Hancock's position, on December 2, 1982, plaintiff accepted a check in the amount of $998.50 refunding the premiums previously paid on the policy and signed a release fully discharging John Hancock from claims on the policy. Attached to the motion was an affidavit of Donald J. Van Heel, who was designated as the home-office representative in the central region for John Hancock. Van Heel averred that he visited plaintiff on December 2, 1982, at her Chicago apartment and advised her of the reasons John Hancock denied liability; he handed her a letter dated November 22, 1982, addressed to her from George E. Halle, the assistant claim consultant for John Hancock. After plaintiff read this letter, Van Heel handed plaintiff John Hancock's check for $998.50, representing a refund of the premiums paid under the policy. When plaintiff accepted the check, Van Heel handed plaintiff a release, which plaintiff read and signed in Van Heel's presence. The November 22, 1982, letter states:

"Dear Mrs. Mehta:

I am writing in regard to your claim for death benefits under this policy.

This policy was issued as of November 8, 1981 and the death of your husband occurred August 30, 1982 within the contestable period of the policy (2 years) as the result of Massive Myocardial Infarction, probably Ventricular Fibrillation and Asystole. Other significant conditions were Hypertension, Diabetes Mellitus.

Medical information contained on the transcript of death as well as that determined through our routine inquiry disclosed that Mr. Mehta had received medical attention as well as hospital attention on several occasions from July 15, 1980 to the date of death.

Had this medical and hospital attention prior to the issue date of the policy been admitted at the time of the writing of the application, no policy would have been issued. Therefore,

the Company feels that its liability is limited to the amount of premiums paid, $998.50.

Our representative is authorized to deliver a check in this amount to you upon completion of the necessary release.

If there are any questions, our representative will be pleased to be of help to you.

This letter is without prejudice to any of the Company's legal rights or defenses, all of which are reserved to their fullest extent, whether herein stated or not."

The document referred to in John Hancock's motion to dismiss as a release recites:

"John Hancock Mutual Life Insurance Company
Boston, Massachusetts 02117
Claim Policy and Research

Whereas a dispute has arisen as to the validity of Policy numbered .64888660 for the sum of Fifty Thousand Dollars----------00/100 Dollars ($50,000.00) issued by the John Hancock Mutual Life Insurance Company on the life of Chinulal J. Mehta, now deceased, and it is deemed best that the matter be finally settled;

Now Therefore, I Surya C. Mehta hereby acknowledge to have received from said Company Nine Hundred & Ninety Eight----------50/100 Dollars ($998.50) being the full amount paid as premiums on said policy, in full settlement and satisfaction, and hereby release and forever discharge said Company from all claim and demand whatever on account of or arising out of or relating to said policy or by reason of premiums paid thereon; and I hereby covenant that I am the sole owner(s) and holder(s) of said policy and entitled to have and receive all moneys payable thereunder, and that I will save said Company harmless from all cost, demand and damage by reason thereof."

Plaintiff was then granted leave to amend her complaint to allege that John Hancock's representatives misrepresented the facts to plaintiff and fraudulently obtained her signature on the release. Plaintiff filed an answer, alleging that she was misled by John Hancock's representative, who misrepresented the facts and so obtained her signature on the release, and that she was not given a copy and had no knowledge of the signature on the form. The court then denied John Hancock's motion to dismiss.

John Hancock then filed a motion to dismiss counts IB, II, III, and IV pursuant to the provisions of section 2—615 of the Code of

Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—615) and a motion for summary judgment on all counts pursuant to section 2—1005 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005) based primarily on the release and supported by the same affidavit used to support the earlier motion to dismiss under the provisions of section 2—619(a)(6).

On July 18, 1985, plaintiff filed an answer to John Hancock's motion to dismiss and an unverified answer to John Hancock's motion for summary judgment. The trial court then allowed John Hancock's motion for summary judgment on that day. Four days later Patel filed a motion to dismiss pursuant to the provisions of section 2—615 of the Code of Civil Procedure, and then Patel moved for summary judgment.

Meanwhile, plaintiff filed a motion to vacate the order entered on July 18, 1985, stating that she had amended her complaint with permission of the court, that she alleged that John Hancock's action in voiding the policy without giving her an opportunity of explanation was illegal, that she had alleged that the release was illegal and that her signature was obtained by misrepresentation of facts and without consideration. Plaintiff also objected that the discovery sought by John Hancock was still pending and that without allowing her to comply with the discovery requests and without considering her answer to such discovery, summary judgment was improper.

Patel's motion for summary judgment, filed November 26, 1985, was based, in part, upon the earlier order granting summary judgment to John Hancock and because Patel, as an agent of John Hancock, could not be held personally liable on the policy. On November 26, 1985, plaintiff's motion to vacate the summary judgment for John Hancock was denied and Patel's motion for summary judgment was allowed.

Plaintiff maintains that summary judgment was improper since she alleged a cause of action in each count and a genuine issue of material fact existed concerning the validity of the release, which she maintains was obtained by fraud and misrepresentation. John Hancock responds there is no genuine issue of fact concerning the validity of the release, which discharges it from all claims relating to the policy. Patel claims summary judgment as to him was proper because his principal was properly discharged and an agent is not liable to an insured for a loss which turns out not to be insured.

John Hancock established its factual position using the affidavit of Van Heel, whereas plaintiff relied on her pleadings. In her amended complaint, plaintiff alleged in count IB that John Hancock's repre-

sentative did not mention the release of the claim subsequent to deceased's death, but explained that "the company and the plaintiff both reserve their rights to the fullest extent whether stated or not." Plaintiff complained that she did not receive a copy of the form she signed or an explanation of the legal effect of the wording and was not asked or warned to consult a lawyer before signing. It was further alleged that she had very little education to understand English and legal terminology, that she was "helpless" and in a depressed and vulnerable condition on account of the death of her husband, and that John Hancock's representative knowingly, intentionally, and fraudulently took undue advantage of her position and misrepresented the facts, and made "false and misleading statements" to plaintiff. In answer to the motion for summary judgment, plaintiff reiterated that count IB set forth sufficient facts to declare the release illegal and void but did not file an affidavit setting out specifically the false and misleading statements.

■ A release may be set aside if there is fraud in the execution or fraud in the inducement. (*Rudolph v. Sante Fe Park Enterprises, Inc.* (1984), 122 Ill. App. 3d 372, 374, 461 N.E.2d 622.) That court defined fraud in the execution as where the party was induced to execute the release not knowing it to be a release but believing it to be an instrument of a different character and defined fraud in the inducement as where the party knows that he is executing a release but was induced to do so by false representations of the other party as to matters other than the character of the instrument. Plaintiff points out that the instrument here is entitled "Claim Policy and Research," unlike the document in *Rudolph*, which was, more appropriately, captioned "Waiver and Release." Nevertheless, according to John Hancock's uncontradicted affidavit, plaintiff was given a letter indicating that John Hancock's representative was authorized to deliver a check in the amount of $998.50 to plaintiff "upon completion of the necessary release." Both the letter and the agreement contradict plaintiff's assertions that both parties reserved their rights. The letter and the body of the instrument clearly indicated that plaintiff was releasing the company from all claims and demands arising out of the policy in exchange for return of the premiums.

■■ ■ In *Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 587, 272 N.E.2d 497, our supreme court stated that an affidavit in support of a motion for summary judgment is actually a substitute for testimony taken in open court, and where such well-alleged facts are not contradicted by counteraffidavit, they must be taken as true, notwithstanding the existence of contrary averments in the adverse par-

ty's pleadings, which merely purport to establish *bona fide* issues of fact. Plaintiff had the burden to allege and prove that a material issue of fact existed which would invalidate the agreement. (*O'Donnell v. American Honda Motor Co.* (1984), 125 Ill. App. 3d 63, 66, 465 N.E.2d 570.) A motion for summary judgment should be granted only when the pleadings, depositions, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240, 489 N.E.2d 867.) Plaintiff may not rely solely on her complaint to oppose a motion for a summary judgment supported by affidavits but must present a factual basis which would arguably entitle her to judgment in her favor. *Wooding v. L & J Press Corp.* (1981), 99 Ill. App. 3d 382, 385, 425 N.E.2d 1055.

In this case, plaintiff chose not to file any affidavits in answer to the motions for summary judgment. The relevant allegations in the documents filed by plaintiff are insufficient to defeat the motion for summary judgment since plaintiff does not set forth evidentiary facts establishing fraud or misrepresentation but only conclusions which do not overcome the materials filed by John Hancock in support of its motion. (*Cf. Castro v. Chicago, Rock Island & Pacific R.R. Co.* (1980), 83 Ill. 2d 358, 361-62, 415 N.E.2d 365.) Summary judgment was properly entered because plaintiff released her claim against John Hancock.

We agree with Patel that he cannot be held liable if his liability as an agent is sought to be based on the liability of his principal, John Hancock. (*Cf. Rakus v. Black* (1965), 55 Ill. App. 2d 438, 204 N.E.2d 611.) Plaintiff alleged that Patel was the agent of John Hancock, and under such circumstances an agent for an insurance company is not personally liable as a party to the contract when he expressly discloses his agency or the person dealing with him knows of the agency. (*Kalalinick v. Knoll* (1981), 97 Ill. App. 3d 660, 665, 422 N.E.2d 1011; *Gieseke v. Hardware Dealers Mutual Fire Insurance Co.* (1963), 46 Ill. App. 2d 131, 141-42, 195 N.E.2d 32.) We conclude that summary judgment was properly entered for Patel against plaintiff.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

JOHNSON and McMORROW, JJ., concur.